Case 1:22-mj-02666-ADC   Document 1-1   Filed 09/21/22   Page 1 of 14

✓ FILED   ___ ENTERED
___ LOGGED   ___ RECEIVED

4:00 pm, Sep 21 2022
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____Deputy

LE: USAO 2022R00283

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | 22-2666-ADC |
| | * | 22-2667-ADC |
| v. | * | CASE NO. _____ |
| | * | |
| **DEANDRE MYERS,** | * | **UNDER SEAL** |
| **THORNE TURNER,** | * | |
| | * | |
| Defendants. | * | |
| | * | |

*******

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

Your affiant, Jenna Klausing, a Special Agent with the Federal Bureau of Investigation, being duly sworn, deposes and states as follows:

### I.   Introduction and Background

1.   I am a Special Agent with the Federal Bureau of Investigation ("FBI"). As such I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I am a Special Agent with the FBI and an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2.   I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since October of 2019. I have received training and experience in interviewing and interrogation techniques, arrest procedures, search and seizure, narcotics, violent incident crimes, search warrant

applications, and various other crimes. Since March of 2020, I have been assigned to work in the Baltimore Field Office, Annapolis Resident Agency, which investigates all federal criminal matters for Anne Arundel, Calvert, Charles, St. Mary's, Queen Anne's, and Kent counties, Maryland.

3. I submit this Affidavit in support of a criminal complaint and an arrest warrant for Deandre Myers[1] a/k/a "Chico" or "Hade" (Myers) and Thorne Damecia Turner[2] (Turner). Based on the facts in this Affidavit, I respectfully submit that there is probable cause to believe that Myers and Turner violated the following offenses: (a) possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841, and (b) conspiracy to commit drug trafficking 21 U.S.C. § 846 (the "SUBJECT OFFENSES").

4. This Affidavit is based upon my participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this Affidavit is being submitted for the limited purpose of obtaining a criminal complaint and arrest warrant, it does not include all the facts that I have learned during this investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. In making this Affidavit, I am relying only on the facts stated herein.

---

1 MYERS was convicted of conspiracy to distribute five kilograms or more of cocaine in 2006 and was sentenced to imprisonment of 209 months. Upon his release in 2019, MYERS absconded from supervised release in 2020 and has an active Violation of Supervised Release Warrant. In addition, MYERS was convicted of second-degree assault in 2004, trespassing on private property in 2003, resisting arrest and trespassing in 1996, second degree assault in 1997, disorderly conduct and disobeying police in 1998, CSD: Possession Marijuana in 1998, second degree assault in 2020.

2 TURNER has no known criminal history.

5. Information in this Affidavit does not always set forth my personal observations, but rather at times reflects information from reports, as well as information provided to me by other law enforcement agents who observed the events described and to whom I have spoken or whose reports I have read.

## II. Summary of Probable Cause

6. Since 2021, the FBI opened an investigation into the violent criminal enterprise known locally as "Newtowne 20." Annapolis has seen a spike in violence and drug-related calls for service out of the neighborhood known as "Newtowne 20," including numerous overdoses on Controlled Dangerous Substances (CDS) as well as several shootings, many resulting in deaths of intended and unintended targets. This neighborhood consists of the Woodside Gardens Apartment complex and the surrounding areas on Julianna Circle in Annapolis, MD.

7. Investigators believe that Myers and Turner are members of the drug trafficking conspiracy of the Newtowne 20 crew and have observed Myers and Turner engage in drug trafficking activities.

8. Based on the investigation, surveillance and confidential source information, I believe that Myers is a drug distributor for Newtowne 20. Additionally, I believe that Turner is a courier for money and narcotics between Newtowne 20 members and other known drug traffickers in the Annapolis area.

   a. Confidential Source[3] (CS-1)

9. In May 2022, the FBI began working with CS-1 and conducted several controlled buys with members of Newtowne 20, including Quentin Jones.[4] In June/July 2022 and August 2022, CS-1 contacted Jones and coordinated cocaine transactions.

10. During the last cocaine deal in July 2022, CS-1 delivered $26,000.00 in cash wrapped in a "Chipotle" takeout bag to Jones for the purchase of one kilogram of cocaine. Jones later met with Myers and Turner who were waiting in Turner's car, a white Ford Fusion. This transaction was observed on video surveillance.

11. Specifically, investigators watched the video surveillance, and observed Myers exit the passenger side of the white Ford Fusion and walk towards Jones' parked work vehicle. Myers and Jones appeared to have a brief conversation and then Myers walked to the passenger side of the work vehicle and retrieved an item, believed to be the same brown paper bag that the CS-1 delivered to Jones earlier in the day. As Myers walked back toward the white Ford Fusion, the "Chipotle" logo was visible on the bag and was captured on video surveillance. Myers entered the passenger side of the white Ford Fusion with the paper bag and then left the area. Investigators believe that Myers had just retrieved the money that CS-1 had provided to Jones for a kilogram of cocaine.

---

[3] Since May 2022, CS-1 has been working as a paid source for the FBI. CS-1 has provided credible and reliable information and agents have corroborated CS-1's information. CS-1's criminal history consists of CDS distribution and destruction of property.

[4] Jones criminal history includes armed robbery (2004), CDS manufacturing/distributing-narcotics (2006), violation of probation (2006), open container (2010), disorderly conduct (2011), conspiracy with intent to distribute and possession with intent to distribute 100 grams of heroin (2013), participation in criminal gang (2019), and conspiracy to commit CDS distribution of narcotics (2021). In 2018, Jones was convicted of participation in a criminal gang and CDS distribution of narcotics and sentenced to twelve years. Jones was recently released from prison in February 2022 and is currently on state probation.

12. Physical surveillance continued to follow the white Ford Fusion, which drove north through Baltimore along Interstate 95 ("I-95") and traveled to Chester, Pennsylvania (PA). Myers and Turner drove down Stotesbury Street and backed into a parking spot behind a row of houses. Upon review of video surveillance, neither Myers nor Turner exited the vehicle while parked in the rear of 1427 Edgmont Avenue, Chester, PA 19013.

13. After approximately 50 minutes, the white Ford Fusion departed the rear of 1427 Edgmont and drove to a local McDonald's restaurant where Myers and Turner were observed eating.

14. A short period later, the white Ford Fusion then drove to 910 E. 15th Street, Chester, PA 19013 and parked. (As discussed further below, this address is believed to be associated with Myers's source of supply.) Turner was carrying what appeared to be a brown paper bag, believed to be the same "Chipotle" bag that Jones had received from CS-1 and delivered to Myers. She and Myers entered the residence. I believe that Turner and Myers were delivering the money into 910 E. 15th Street to provide to their source of supply, Joseph M. Dukes[5]. At this time, physical surveillance was terminated.

---

[5] Dukes was federally convicted of three counts of conspiracy to distribute cocaine in 2008 and conspiracy to distribute five kilograms or more of cocaine in 2011. Dukes was also convicted in the state of Pennsylvania for a violation of the drug act in 2007, of recklessly endangering in 2015, resisting arrest in 2016, fleeing to elude police officer in 2016, damage to vehicle or property in 2016, violation of probation in 2016, and violation of the drug act in 2018.

15. Investigators reviewed the toll analysis[6] on telephone numbers associated with Myers[7], Turner, and Dukes, and believe that Dukes initially directed Myers and Turner to 1427 Edgemont Avenue, as the original meeting location. However, upon Myers and Turner arrival in the white Ford Fusion, for a reason unknown to investigators, Dukes changed the meeting location to 910 E. 15th Street.

16. Approximately 36 hours later, on July 29, 2022, investigators located the white Ford Fusion parked in front of Turner's known residence at 7889 Tall Pines Court, Glen Burnie, MD, which is also Turner's registered MVA address. Based on the investigation and the physical surveillance, investigators believe Myers and Turner drove to Chester, PA to meet with their source of supply, Dukes, to purchase the kilogram of cocaine. Investigators believe that Myers and Turner then drove back to Maryland with the cocaine.

17. That morning, after Myers and Turner returned from Chester, PA, Jones contacted CS-1 stating the cocaine was ready to be delivered. Based on this call, investigators believe Myers and/or Turner contacted Jones to inform him that they were in possession of the requested cocaine.

18. In the evening hours of July 29, 2022, CS-1 met Jones after work at the same meeting location in the Annapolis area where the first cocaine transaction took place. The meeting

---

[6] Pursuant to a subpoena signed on September 15, 2022, T-Mobile provided information regarding the call number (610) 808-7933. The subscriber is Dukes, and the address on the account is 1427 Edgmont Ave, Chester, PA. One of the top contacts for Dukes is a phone number registered to Tiomba Ballard who is the resident of 910 E. 15th Street. A second top contact of Dukes is a phone number registered to Leshay Brown, the other resident of 1427 Edgmont Avenue. Both Turner's and Myers's phone number appear in Dukes tolls as well.

[7] Pursuant to a subpoena signed on August 23, 2022, Verizon provided information regarding the call number 410-507-6554. Myers has numerous contacts with Turner, Jones, and Smith. Myers also has contact with Dukes.

was audio and video recorded. Prior to Jones arriving and after he departed, Jones was observed by investigators conducting counter-surveillance. I believe Jones was attempting to conduct count-surveillance to ensure the meeting location was not compromised. I believe that Jones delivered to CS-1 the cocaine that CS-1 had ordered a few days before and that Myers and Turner had just obtained in Chester, PA from their source of supply.

19.     CS-1 then delivered the white powdery substance believed to be cocaine directly to the FBI investigators. The gross weight of the package was 997.1 grams. The chemical analysis results are still pending but based on my training and knowledge of cocaine packaging (specifically in kilogram-quantities), I believe this is the cocaine that CS-1 ordered.

      b.  Confidential Source – CS-2[8]

20.     CS-2 was interviewed in late August 2022 and is believed to be an associate of Myers. CS-2 advised investigators that he/she is familiar with Myers' cocaine and heroin supplier, known to CS-2 as "Duke," who operates out of Chester, PA. CS-2 described "Duke" as a 6'2" black male with a bald head. Investigator's showed CS-2 a photo and CS-2 confirmed the individual was Myers' supplier.

21.     Furthermore, CS-2 described the relationship between Myers and his supplier began when Myers was "in the feds," which investigators believe meant when Myers was also incarcerated in federal prison. Investigators believe that Dukes and Myers were incarcerated at the same time in the Federal Bureau of Prisons.

22.     Investigators also reviewed Myers's social media account and observed that Dukes is a "Facebook friend" with Myers. Myers is the only individual from Annapolis, Maryland that

---

[8] Since August 2022, CS-2 has provided reliable information, that has been corroborated by agents. CS-2's criminal history includes armed robbery and various CDS convictions and is currently on probation. CS-2 is currently working with the FBI for cooperation credit.

7

Dukes has listed on his publicly available Facebook friends list. According to CS-2, Turner and Myers are believed to be romantically involved and were previously neighbors in the Eastport Terrance Housing Community, a neighborhood with high drug-related activity with numerous fatal and non-fatal overdoses.

23. As discussed above, I believe the request for one kilogram of cocaine prompted Myers and Turner to deliver the $26,000 that they obtained from Jones to their supplier, Dukes, in Chester, PA. Furthermore, I believe Myers traveled to Chester, PA because he did not have the quantity of cocaine on hand in Maryland. According to CS-2, Myers would take a portion of the ordered narcotics and add cutting agents to make a profit on the sale.

    c. CS-1 controlled buy – Late August 2022

24. In late August of 2022, CS-1 contacted Jones and coordinated the purchase of 500 grams of cocaine. On the morning of the purchase, FBI investigators provided CS-1 with $15,000.00 to purchase the 500 grams of cocaine. The amount included $13,000.00 for the cocaine and $2,000.00 for the "tax" and for transportation of the cocaine. Based on previous transactions and recorded phone calls, I believe Jones needed to pay Myers a tax for purchasing less than a kilogram of cocaine and for the transportation of the cocaine to Maryland from Pennsylvania.

25. On August 29, 2022, while under physical surveillance, CS-1 met with Jones in the Severna Park, MD area and exchanged the money. Jones then left the area and again conducted counter-surveillance techniques.

26. In addition to the observed activities, investigators reviewed Jones's toll analysis. On August 28, 2022, at approximately 6:53 p.m., Jones contacted Myers two times and had a 4 minute and 56 second phone call. Additionally, Jones contacted Myers again on August 29, 2022, at 8:40 a.m. and again at 9:01 a.m. It is my belief that Jones was calling Myers to coordinate a

meeting, because Jones had received the money from CS-1. Then, from 11:02 a.m. to 11:54 a.m., Jones called Myers seven times, one of which resulted in a 32 second phone call. It is my belief that these communications were a combination of phone calls and text messages to coordinate the money transfer.

27. In the early afternoon of August 29, 2022, Jones drove to Ann's Dari-Crème located 7918 Governor Ritchie Highway, Glen Burnie, MD 21061. Turner's vehicle, the white Ford Fusion, was observed entering the parking lot, and Myers was observed exiting car from the passenger side. Jones was observed opening the rear passenger side of Turner's car and placing an unknown object inside. For the next couple of hours, the white Ford Fusion, believed to be driven by Turner, drove to multiple locations throughout Anne Arundel County and Prince George's County meeting with multiple unknown individuals for short durations of time. On multiple occasions, investigators observed Myers exiting the vehicle. Turner was also observed at various points exiting the vehicle and entering the backseat of the vehicle, where her newborn child was located. Based on the short durations of the visits, I believe Myers was meeting various unknown individuals, suspected drug customers, and was collecting money for future drug purchases. I believe Turner was driving because Myers is currently a fugitive.

28. At approximately 3:00 p.m. on August 29, 2022, Turner parked in the vicinity of 610 Second Street, Annapolis, MD. After parking for a moment, Myers exited the vehicle and walked to the back of the building immediately adjacent to 610 Second Street, Annapolis, MD, the Mount Zion Baptist Church, and out of the view of surveillance. Investigators learned that the 610 Second Street's backyard is accessible through a common space behind Mount Zion Baptist Church that is obscured from surveillance because of a tree. Myers appeared to have a white object

in a bag in his hand as he exited the vehicle, similar to the object later seen at 8107 Dewberry Circle, Apt 1720, Pasadena, MD, and walked out of view to the back of 610 Second Street.

29. Minutes later, Myers came back around the same side of the church and re-entered the white Ford Fusion. It is my belief, Myers accessed 610 Second Street at this time and used the backyard entrance of 610 Second Street, Annapolis, MD to avoid law enforcement detection. I believe Myers was making a drug delivery to Alonzo Smith[9], another known associate, based on my training and experience and the observations at 610 Second Street, Annapolis, MD and later at 8107 Dewberry Cir, Apt 1720, Pasadena, MD.

30. CS-2 provided information that CS-2 had previously met Myers for a narcotics transaction in the vicinity of 610 Second Street, Annapolis, MD in the summer of 2022, and Myers had described this location to CS-2 as a residence belonging to a family member. I believe Myers and Smith share a familial relationship in addition to a drug-trafficking relationship. Furthermore, I believe Myers uses this location for narcotics trafficking to avoid law enforcement detection because it is unattributable to him through public information.

31. At approximately 4:00 p.m., Turner pulled into the apartment community of 8107 Dewberry Cir, Apt 1720, Pasadena, MD. Myers was observed exiting the passenger side of the vehicle and entering 8107 Dewberry Cir, Apt 1720, Pasadena, MD. Turner drove out of the community to a Walmart and then later returned to 8107 Dewberry Cir, Apt 1720, Pasadena, MD where Myers was observed entering the passenger side of the white Ford Fusion carrying a white plastic bag, similar to the one seen earlier at 610 Second Street, Annapolis, MD, under his arm that appeared to be weighted down.

---

[9] Smith was convicted of CDS possession in 1993, CDS possession paraphernalia in 1998, CDS possession-not marijuana in 2001, and conspiracy to distribute and possession with intent to distribute cocaine in 2004.

32. Turner then drove further into the community and stopped, and Myers exited the passenger side of the vehicle with nothing under his arm or in his hands and entered another vehicle. Based on these observations, I believe Myers entered 8107 Dewberry Cir, Apt 1720, Pasadena, MD, the stash location, and retrieved cocaine for Jones and CS-1 that was concealed in the white plastic bag observed underneath his arm. Further, I believe Myers left the bag with the suspected cocaine in Turner's car. Finally, as further discussed below, based on phone communications between Myers, Turner, and Jones, I believe Myers left the cocaine in the white Ford Fusion for Turner to deliver to Jones.

33. Law enforcement continued to conduct surveillance on Turner and at approximately 5:00 p.m. on August 29, 2022, Turner drove to Lake Waterford Park located at 820 E. Pasadena Road, Pasadena, MD 21122, where she parked in a space adjacent to the basketball courts. During this time, investigators reviewed the toll data on Jones phone and observed a call from Turner. After this call, Turner then drove from Lake Waterford Park to Mago Vista Park located at 832 Mago Vista Road, Arnold, MD 21012. Jones's vehicle was observed in the parking lot of Mago Vista Park and Turner was observed placing a previously unseen brown paper bag into the passenger side window of his vehicle. Turner then immediately left the area. Law enforcement continued surveillance on Jones.

34. Prior to Turner and Jones meeting, Jones contacted Myers two times. Once Turner arrived at Lake Waterford Park, Jones contacted Turner four times between 6:15 p.m. and 6:17 p.m. Jones then contacted Myers two times at 6:19 p.m., then Turner called Jones twice. The final communication between Turner and Jones was at 6:41 p.m., moments before investigators observed Turner approach the vehicle with Jones in the driver seat and place the suspected cocaine inside the vehicle on the passenger side. After reviewing this data and analyzing the timeline, it is

my belief that Jones changed the location from Lake Waterford Park to Mago Vista Park and was calling both Myers and Turner to coordinate the meeting and drop off location for the cocaine.

35.   After Turner dropped off the package containing the suspected cocaine, Jones was observed exiting the vehicle, walking toward the basketball court with a red backpack, and playing basketball for approximately two hours. During this time, the red backpack was placed on a bench adjacent to the basketball court. Jones then returned to the vehicle and entered the passenger side. An unknown female, believed to be his girlfriend, was driving and a juvenile was in the backseat of the vehicle. Shortly after exiting Mago Vista Park, Anne Arundel County Police department initiated a traffic stop on the vehicle based on an illegal U-turn and illegal window tint on the vehicle. During the traffic stop, the officer informed Jones that a K9 unit was enroute to the traffic stop location. At this time, Jones fled on foot carrying the red backpack. Officers chased Jones and observed him discarding items from the red backpack while running.

36.   After the pursuit, law enforcement recovered a brown paper bag containing a white plastic shopping bag from the area where Jones was seen running. The white plastic shopping bag contained a white powdery substance wrapped in plastic and tape. The gross weight of the white powdery substance was 612.1 grams. Investigators believe that this white plastic bag appeared to be the same bag that Myers was carrying when he left 8107 Dewberry Cir, Apt 1720, Pasadena, MD and placed in the white Ford Fusion, and the same bag that Turner placed in Jones car a few hours before.

37.   Based on my training, experience, observations, and debriefings of CS-1 and CS-2, I believe Myers retrieved the cocaine, previously ordered by CS-1, from 8107 Dewberry Cir, Apt 1720, Pasadena, MD and provided it to Turner. Turner then went to 7889 Tall Pines Court, Apt G, Glen Burnie, MD before meeting Jones to deliver the 500 grams of cocaine. Further, I

believe Jones fled the traffic stop because he knew that he was in possession of cocaine and that the K9 would have alerted on the cocaine inside his backpack, located in the vehicle.

### d. Another Trip to Chester, PA – September 2022

38. On September 8, 2022, CS-2 contacted investigators stating he/she believed Turner made another trip to Chester, PA for Myers to bring back narcotics. According to CS-2, the trip was either the day prior or on September 6, 2022. Investigators reviewed GPS tracker information for the white Ford Fusion and found the white Ford Fusion drove to Chester, PA on September 6, 2022, and arrived at 1427 Edgmont Ave, Chester, PA, at 1:00 p.m. Specifically, the white Ford Fusion departed the Eastport neighborhood of Annapolis, MD and generally took US 50/301 over the Annapolis Bay Bridge, into the Eastern Shore of Maryland, up through Delaware, and into Chester, PA. According to tracker information, the white Ford Fusion parked behind 1427 Edgmont Ave, Chester, PA, in a similar location seen on July 27, 2022.

39. Investigators reviewed the toll analysis on Turner's phone and learned that at approximately 12:43 p.m., Turner called Dukes. Dukes then called Turner at approximately 12:52 p.m., and Turner called Dukes again once she had arrived at 1427 Edgmont Ave. at 1:00 p.m..

40. After less than three minutes, the white Ford Fusion departed the vicinity of 1427 Edgmont Ave and took nearly the same route back to the Eastport neighborhood in Annapolis. Upon arriving in Annapolis, investigators reviewed the toll analysis and observed that Turner called Myers. I believe, based on my training and experience, that Turner drove to Chester, PA to meet with Dukes to obtain drugs. Given that she was only at Dukes' residence, 1427 Edgmont Ave., briefly, I believe that the requested drugs were quickly delivered to her and that she immediately departed the vicinity and returned to Annapolis. Once in Annapolis, I believe she then provided the narcotics to Myers.

22-2666-ADC and 22-2667-ADC

41. Based on the toll analysis, investigators corroborated CS-2's information and believe that Turner made another trip to Chester, PA, to retrieve narcotics. Additionally, I believe Turner called Myers to inform him that she had arrived back in Annapolis.

### III. Conclusion

42. Based on the foregoing, I respectfully submit that there is probable cause to issue the requested criminal complaint and arrest warrants.

_____
Jenna Klausing, Special Agent
Federal Bureau of Investigation

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 4(d) this  21st  of September 2022.

*A. David Copperthite*
_____
Honorable A. David Copperthite
United States Magistrate Judge
District of Maryland